UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | 2:02-cr-0674-PMP-LRL |
| CHAO FAN XU, *et al.*, | NOTICE OF FOREIGN LAW (#263) |
| Defendants. | |

**REPORT & RECOMMENDATION**

Defendant Guo Jun Xu is under indictment on one count of RICO Conspiracy, a violation of 18 U.S.C. § 1962(d), one count of Money Laundering Conspiracy, a violation of 18 U.S.C. § 1956(h), one count of Conspiracy to Transport Stolen Moneys, a violation of 18 U.S.C. § 371, and three counts of Use of a Fraudulently Obtained Visa, a violation of 18 U.S.C. §§ 1546(a) and 2. The matter before the court is the government's Notice of Foreign Law (#263) made pursuant to Rule 26.1 of the Federal Rules of Criminal Procedure, in which it requests the following instruction be given to the jury at trial: "You are instructed that fraud, or a scheme or attempt to defraud the Bank of China is a felony under foreign Chinese law." Guo Jun Xu filed a Response (#272), the government filed a Reply (#279), and Guo Jun Xu filed a Surreply (#342).

**BACKGROUND**

The charges in this case stem from a scheme allegedly entered into by Guo Jun Xu and others to defraud the Bank of China of at least $485 million, launder the stolen money through, among other places, Hong Kong, Canada, and the United States, and flee the People's Republic of China ("China") and immigrate to the United States by entering into sham marriages with naturalized U.S. citizens. (Second Superseding Indictment (the "Indictment") (#151).) Count One of the Indictment charges,

among other things, that defendants conducted and participated in a pattern of racketeering activity consisting of multiple acts indictable under U.S. law—including "engaging in monetary transactions in property derived from specified unlawful activity," a violation of 18 U.S.C. § 1957(a)—all in violation of 18 U.S.C. § 1962(d) (RICO conspiracy). (*Id.* at ¶ 11.a.)  Count Two, in turn, charges defendants with conspiring to engage in monetary transactions in property derived from specified unlawful activity in violation of § 1957(a), and, correspondingly, in violation of 18 U.S.C. 1956(h) (money laundering conspiracy); specifically, that in Nevada and elsewhere:

> [D]efendants . . . conspired to knowingly engage and attempt to engage and cause to engage and attempt to engage, in monetary transactions by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than ten thousand dollars ($10,000), including, but not limited to, wire transfers, deposits, withdrawals and casino transactions, such property having been derived from a specified unlawful activity, that is, fraud, and a scheme and attempt to defraud, against a foreign bank (as defined in paragraph 7 of section 1(b) of the International Banking Act of 1978), in violation of Title 18, United States Code, Section 1957(a).

(Indictment (#151) at ¶15) (emphasis added)

The "specified unlawful activity" as alleged by the government is defined in 18 U.S.C. § 1956(c)(7)(B)(iii) as: "an offense against a foreign nation involving . . . fraud, or any scheme or attempt to defraud, by or against a foreign bank (as defined in paragraph 7 of section 1(b) of the International Banking Act of 1978) . . . ."  The International Banking Act of 1978 defines a "foreign bank" as:

> Any company organized under the laws of a foreign country . . . which engages in the business of banking, or any subsidiary or affiliate, organized under such laws, of any such company. . . .  [T]he term "foreign bank" includes, without limitation, foreign commercial banks, foreign merchant banks and other foreign institutions that engage in banking activities usual in connection with the business of banking in the countries where such foreign institutions are organized or operating . . . .

12 U.S.C. § 3101(7).

In the case at bar, the Indictment identifies the foreign bank as follows:

> The Bank of China (the "Bank) was a financial institution operating primarily in the People's Republic of China ("China").  The Bank had various sub-branch offices located throughout China, the Hong Kong Special Administrative Region ("Hong Kong"), and Macau, including a sub-branch in Kaiping, Guangdong, China (the "Kaiping Sub-Branch").

(Indictment (#151) at ¶ 1). The Bank of China is a foreign bank within the meaning of paragraph 7 of section 1(b) of the International Banking Act of 1978. *See Bank of China v. Wells Fargo Bank & Union Trust Co.*, 209 F.2d 467, 474 (9th Cir. 1953) ("The Bank of China is a central bank of a recognized foreign state."). With regard to the fraudulent scheme, the Indictment charges that defendants and others:

> 1. Used their positions within the Bank of China to obtain at least $485 million from the Bank through numerous wire transfers of funds, use of facsimile transmissions, telegrams, checks, and cash.
>
> 2. Used numerous legal entities established in China and Hong Kong for the unlawful transfers of funds from the Bank of China.
>
> 3. Transported, transmitted, or transferred to the United States, and from state to state in the United States, funds which were stolen, converted, or obtained through the fraudulent scheme.
>
> 4. Conducted or caused to be conducted numerous monetary transactions including, but not limited to, wire transfers, deposits, and withdrawals in various business accounts, personal accounts, and casino accounts located in the United States, Canada, and elsewhere, as well as casino transactions in Las Vegas, Nevada, and elsewhere.

(Indictment (#151) at ¶¶ 13(a)-(d),16(a).) The government asserts that it is this alleged activity by the defendants and ostensible co-conspirators that implicates an issue of foreign law; in particular, Chinese laws concerning fraud (as that term is defined in the United States). (Notice (#263) at 5.)

## DISCUSSION

### A. Foreign Law Determination

To support a conviction on the RICO conspiracy charged in Count One and the money laundering conspiracy charged in Count Two, the government must prove that the bank funds at issue were derived from a specified unlawful activity—a foreign offense involving fraud, or a scheme or attempt to defraud, against a foreign bank. § 1956(c)(7)(B)(iii). The terms "fraud" and "scheme to defraud" a foreign bank are not defined in § 1956 and have not been interpreted by U.S. courts in reported cases. Nevertheless, when left undefined by Congress, "statutory terms are generally interpreted in accordance with their ordinary meaning." *BP Am. Prod. Co. v. Burton*, 127 S. Ct. 638, 643 (2006) (citation omitted); *see also United States v. Mitchell*, 985 F.2d 1275, 1280 (4th Cir. 1993)

3

(in making foreign law determination, court may draw upon the canons of statutory interpretation with which U.S. courts interpret American laws). The Supreme Court has said "the words 'to defraud' commonly refer to wronging one in his property by dishonest methods or schemes, and usually signify the deprivation of something of value by trick, deceit, chicane or overreaching." *McNally v. United States*, 483 U.S. 350, 359 (1987) (citation and internal quotation marks omitted), *superseded by statute on other grounds as stated in United States v. Sawyer*, 239 F.3d 31, 39 (1st Cir. 2001).

Employing the above definition, a determination must be made as to whether particular conduct "involving . . . fraud, or any scheme or attempt to defraud, . . . against a foreign bank" is a felony under Chinese law. *See United States v. One 1997 E35 Ford Van*, F. Supp. 2d 789, 802 (N.D. Ill. 1999) (holding phrase "against a foreign nation" in § 1956(c)(7)(B) requires the alleged conduct be prohibited under the law of foreign nation in which it was committed); *see also* Tenth Circuit Criminal Pattern Jury Instructions 2.73 & 2.73.1 (2005) (instructing "[specify form of unlawful activity charged in the indictment] is a felony under [foreign] law"). While "Rule 26.1 does not itself mandate that judge rather than jury decide all questions of foreign law," *United States v. McClain*, 593 F.2d 658, 669 (5th Cir. 1979), issues of foreign law are questions of law, Fed. R. Crim. P. 26.1, and "[i]t has long been thought . . . that the jury is not the appropriate body to determine [such] issues." Fed. R. Civ. P. 44.1 advisory committee note to 1966 adoption. Thus, the foreign law determination at issue here is within the court's purview and appropriate for judicial resolution.

As the government notes in its brief, however, there are no reported cases in which a U.S. court has determined whether conduct "involving . . . fraud, or any scheme or attempt to defraud, . . . against a foreign bank" is punishable under foreign, let alone Chinese, law. *See* § 1956(c)(7)(B)(iii). Foreign law analyses in other contexts may therefore provide guidance. Notably, courts make substantially the same foreign law pronouncements in extradition cases, where a determination must be made as to whether alleged conduct is a crime in both the foreign country and the United States. *Theron v. United States Marshal*, 832 F.2d 492, 496 (9th Cir. 1987) (citation omitted). Applying this principle of "dual criminality," courts typically examine similar provisions of federal criminal law and look to whether

4

the "essential character of the acts criminalized by each country are the same and if the laws are substantially analogous." *Id.* (citation and internal quotation marks omitted). Thus, there is no need for an identical counterpart under the laws of the foreign country. *Id.*; *see also Collins v. Loisel*, 259 U.S. 309, 312 (1922) (dual criminality "does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of liability shall be coextensive. . . . It is enough if the particular act charged is criminal in both jurisdictions.").

Applying the dual criminality principle to the case at hand is made the more difficult because the parties have not provided the court with helpful materials such as, for example, declarations of experts on Chinese law. Nevertheless, the court is "charged with determining the best reading of the laws." *Mitchell*, 985 F.2d at 1281; *see also In re Arbitration Between: Trans Chem. Ltd v. China Nat'l Mach. Import & Export Corp.*, 978 F. Supp. 266, 283-89 (S.D. Tex. 1997) (determining Chinese law). In doing so, the court may draw upon the apparent purpose of the Chinese laws and their plain meaning and structure. *See Mitchell*, 985 F.2d at 1280 (considering these factors). Moreover, the court may perform its own independent investigation where the evidence presented by the parties is inconclusive. 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 2444, at 652 (2d ed. 1995) (stating that if the evidence is inconclusive, "the court should request a further showing by counsel, engage in its own research, or direct that a hearing be held, with or without oral testimony, to resolve the issue"); *see also Shari'a Nat'l Group for Communc'ns & Computers, Ltd v. Lucent Techs. Int'l, Inc.*, 331 F. Supp. 290 (D. N.J. 2004) (conducting independent investigation to determine how law of Saudi Arabia affected damages that Saudi Arabian corporation was entitled to receive in breach of contract action).

In fact, "a court may consider any relevant material or source . . . without regard to the Federal Rules of Evidence." Fed. R. Crim. P. 26.1. "The broad discretion afforded a court in considering evidence to determine foreign law derives from the general unavailability of foreign legal materials, and the frequent need for expert assistance in understanding and applying the materials." *Id.* Courts, in their discretion, have consequently relied on various forms of evidence. *See, e.g., Mitchell*, 985 F.2d

at 1280-81 (affidavits by foreign officials, certified translations of foreign decrees, student note published in a foreign law journal, court's independent research and analysis of foreign law) (citations omitted)

In the case at bar, the government refers to several Chinese criminal statutes it believes fit within the definitions of "fraud" and "scheme to defraud," as those terms are used in § 1956(c)(7)(B)(iii) to define "specified unlawful activity." (*See* Notice (#263-2).) At least two of the Chinese statutes cited by the government make it a crime to commit "fraud," as defined in *McNally*, *supra*, or something "substantially analogous" to it. *See Theron*, 832 F.2d at 496 (setting forth requirements of "dual criminality"). Section 5 ("Crimes of Financial Fraud"), Article 192, of the Criminal Law of the People's Republic of China provides that "[w]hoever, for the purpose of illegal possession, unlawfully raises funds by means of fraud shall be [guilty of a crime]." Criminal Law (revised at the Fifth Session of the Eighth Nat'l People's Cong., Mar. 14, 1997), *reprinted at* http://www.cecc.gov/pages/newLaws/-criminalLawENG.php.[1] Article 382 of the Criminal Law of the People's Republic of China similarly provides that "[a]ny state functionary, who, by taking advantage of his office, appropriates, steals or swindles public money or property or by other means illegally takes it into his own possession shall be regarded as being guilty of embezzlement." *Id.* Likewise, "[a]ny person authorized by State organs, State-owned companies, enterprises, institutions or people's organizations to administer and manage State-owned property who, by taking advantage of his office, appropriates, steals, swindles the said property or by other means illegally takes it into his own possession shall be regarded as being guilty of embezzlement." *Id.* These provisions refer to the deprivation of something of value by dishonest means and therefore have the same "essential character" of "fraud" as defined by the Court in *McNally*.

Further, for the amount of money alleged in the Indictment to have been stolen–$485 million–

---

[1] *See Ramirez v. Autobuses Blancos Flecha Roja, S.A. De C.V.*, 486 F.2d 493, 497 n.11 (5th Cir. 1973) (it did not matter that party in attempting to prove dissimilarity of Mexican law and Texas law relied upon unauthenticated copy of Mexican codes, since Rule 44.1 permits district court to consider any relevant material or source in determining foreign law); *see also* Fed. R. Crim. P. 26.1 advisory committee notes ("Rule 26.1 is substantially the same as Civil Rule 44.1.").

6

the sentencing range in China for each of the above two offenses is a minimum of ten years imprisonment and a maximum potential penalty of death. Crim. L. PRC chpt. VIII, arts.192 and 383, *reprinted at* http://www.cecc.gov/-pages/newLaws/criminalLawENG.php. Hence, although the labels under which offenses are proscribed in the two countries may differ, and punishments vary, the conduct "involving . . . fraud, or any scheme or attempt to defraud, . . . against a foreign bank" alleged in the Indictment would constitute a felony under the laws of China. *See Collins*, *supra*. This court therefore finds the requested jury instruction to be appropriate: "You are instructed that fraud or a scheme or attempt to defraud the Bank of China is a felony under Chinese law."

**B. Ex Post Facto Clause**

Guo Jun Xu's *ex post facto* argument is without merit. "The application of a statute to a crime that began prior to, but continued after, the effective date of the statute, does not violate the *ex post facto* clause." *United States v. Alkins*, 925 F.2d 541, 549 (2d Cir. 1991) (citation and internal quotation marks omitted). Applying this principle, courts have held the Ex Post Facto Clause does not preclude the government from including racketeering acts committed before RICO's effective date, provided that the alleged RICO conspiracy and the defendant's membership in it continued after RICO's effective date. *See*, *e.g.*, *United States v. Ohlson*, 552 F.2d 1347, 1348 (9th Cir. 1977) (per curiam). While Guo Jun Xu is charged in a racketeering conspiracy alleged to have begun in 1991, several years before the relevant Chinese statutes came into effect, the Indictment charges him with continuing the conspiracy through 2004. (Indictment (#151) at 4; Notice (#263-2) at 1.) Thus, the Ex Post Facto Clause does not preclude the court from giving the requested jury instruction.

. . .

. . .

. . .

. . .

. . .

. . .

7

## RECOMMENDATION

Based on the foregoing, it is the recommendation of the undersigned United States Magistrate Judge that the court overrule defendant's objections to the government's Notice of Foreign Law (#263). (*See* ##272,342.)

DATED this 7th day of January, 2008.

_____
**LAWRENCE R. LEAVITT**
**UNITED STATES MAGISTRATE JUDGE**